**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| PHILLIP A. D., )<br>)<br>     **Plaintiff,** )<br>)<br>vs. )<br>)<br>ANDREW M. SAUL, )<br>**Commissioner of Social Security,** )<br>)<br>     **Defendant.** ) | Case No. 19-CV-163-JED-JFJ |

**REPORT AND RECOMMENDATION**

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Phillip A. D. seeks judicial review of the Commissioner of the Social Security Administration's decision finding that he is not disabled. For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

**I.     General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to

establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Procedural History and the ALJ's Decision

Plaintiff, then a 42-year-old male, applied for Title XVI supplemental security income benefits on December 28, 2015, alleging a disability onset date of June 22, 2015, later amended to October 5, 2016. R. 17, 185-191, 203. Plaintiff claimed he was unable to work due to conditions including bipolar, hepatitis C, post-traumatic stress disorder ("PTSD"), anxiety, and depression. R. 219. Plaintiff's claim for benefits was denied initially on April 22, 2016, and on reconsideration on July 28, 2016. R. 81-107. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on February 12, 2018. R. 39-80. The ALJ issued a decision on March 29, 2018, denying benefits and finding Plaintiff not disabled because he was able to perform other jobs existing in the national economy. R. 17-34. The Appeals Council denied review, and Plaintiff appealed. R. 1-3; ECF No. 2.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of December 28, 2015. R. 19. At step two, the ALJ found that Plaintiff had the following severe impairments: depression; anxiety disorder; personality disorder; status post right shoulder dislocation and rotator cuff tear; and status post non-displaced fracture of the tibial plateau and proximal fibula. R. 20. At step three, the ALJ found that Plaintiff had no

impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 21-23. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had mild limitations in the area of adapting or managing oneself, and moderate limitations in the three areas of understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. R. 22.

After evaluating the objective and opinion evidence, and Plaintiff's statements, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work as follows:

> The claimant is able to lift, carry, push or pull up to ten pounds frequently and twenty pounds occasionally. The claimant is able to sit for up to six hours in an eight-hour workday. The claimant is able to stand and/or walk up to four hours in an eight-hour workday. The claimant is able to occasionally climb ramps or stairs and is able to frequently balance or stoop. The claimant cannot not [sic] climb ladders, ropes or scaffolds, kneel, crouch or crawl and should not be exposed to unprotected heights. The claimant is able to perform simple, routine tasks. The claimant is able to interact with supervisors as needed to receive work instructions and is able to work in proximity to co-workers. However, the job should not require close cooperation and communication with co-workers in order to complete work tasks. The job should provide opportunity for the claimant to work mostly alone. The claimant should not interact with the general public[.]

R. 23. At step four, the ALJ found that Plaintiff was unable to perform past relevant work. R. 32. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other unskilled light work, such as Bench Assembler, Electrical Accessory Assembler, and Office Helper. R. 32-33. The ALJ noted the VE's testimony that a four-hour limit on standing or walking would be treated as a "sit/stand" option, and it would reduce the available number of Electrical Accessory Assembler jobs by half, from 80,000 to 40,000. R. 33. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). *Id.* Based on the VE's testimony, the ALJ concluded these positions

existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

### III.  Issues

Plaintiff raises four points of error in his challenge to the denial of benefits: (1) the ALJ failed to propound a proper hypothetical to the VE, resulting in failure at steps four and five of the sequential evaluation; (2) Plaintiff cannot perform the jobs identified at step five of the sequential evaluation; (3) there are an insufficient number of jobs available to Plaintiff; and (4) the ALJ failed to properly evaluate the medical source evidence. ECF No. 13. Because the second and third allegations of error are related, the undersigned addresses them together in Part IV.B.

### IV.  Analysis

#### A.  ALJ Properly Evaluated the Evidence Regarding Plaintiff's Physical and Mental RFC Limitations

##### 1.  ALJ Properly Considered Plaintiff's Reaching Ability

Plaintiff argues the ALJ committed reversible error by failing to include any reaching limitations in his hypothetical to the VE or the determinative RFC.[1] In support, Plaintiff points to his own testimony regarding his right shoulder impairments resulting from an October 2016 accident, and a statement to a mental health provider in October 2017 that he could not lift his right arm above his shoulder. *See* R. 61-62, 668. Plaintiff acknowledges that the ALJ extensively discussed the right shoulder injury and subsequent treatment, but he contends the ALJ was required to limit Plaintiff's reaching ability in the RFC based on his statements regarding the ongoing injury

---

[1] In this section of the opening brief, Plaintiff further contends that the RFC's four-hour standing/walking restriction precludes performance of light-exertion work. ECF No. 13 at 3-4. Because Plaintiff repeats this argument in the second allegation of error, the undersigned addresses the argument below in Part IV.B.

5

and the ALJ's finding that the "status post right shoulder dislocation and rotator cuff tear" was a severe impairment at step two. *See* R. 20.

Plaintiff's arguments are unpersuasive. In establishing the RFC for light work, the ALJ documented the evidence showing that Plaintiff suffered a dislocated right shoulder in October 2016, which was corrected in the emergency room, and that treating physician Antoine Jabbour, M.D., managed Plaintiff's shoulder treatment in the months following the accident. *See* R. 24-26 (citing R. 426, 429-429, 433, 435, 437, 443, 445-446, 448, 450-451). A magnetic resonance image ("MRI") of the right shoulder revealed a large Hill-Sachs deformity of the right humeral head with a rotator cuff tear. R. 24 (citing R. 435). As the ALJ noted, Dr. Jabbour prescribed narcotic pain medication, a sling, and shoulder exercises in October 2016. R. 25 (citing R. 429). In November 2016, Dr. Jabbour described the right shoulder injury as progressing slowly, (R. 437), and later that month, he noted that the right shoulder may require rotator cuff repair surgery but Plaintiff would have to wait a couple of months to allow the bone to heal (R. 446). At Plaintiff's final appointment with Dr. Jabbour in December 2016, Plaintiff reported his shoulder was "improving significantly," and Dr. Jabbour observed about 150 degrees of active forward flexion and abduction without instability. R. 450. Dr. Jabbour assessed a "much improved" right shoulder. R. 451. He opined that Plaintiff had reached maximum medical improvement, and he advised that Plaintiff's shoulder would improve slowly over time. *Id.* Dr. Jabbour discharged Plaintiff at that visit, indicating no surgery was required and discontinuing the narcotic pain medication prescription. *Id.*

The ALJ also noted Plaintiff's testimony that Dr. Jabbour wanted to wait for his rotator cuff to heal before pursuing surgery, and that he did not have the money for any additional treatment. R. 24 (citing R. 61). The ALJ noted Plaintiff testified it was difficult for him to raise his hands over his head, grab certain things, and reach, that he estimated he could lift twenty to

6

twenty-five pounds, and that he had broken his right elbow. R. 24 (citing R. 61-63). The ALJ found Plaintiff's own testimony was not entirely consistent with the medical evidence and other evidence in the record concerning the intensity, persistence, and limiting effects of his symptoms. R. 21. Plaintiff does not challenge the ALJ's consistency findings in this regard.

The undersigned finds the ALJ adequately explained her reasons for not imposing a reaching restriction. Specifically, the ALJ indicated Plaintiff's treatment with Dr. Jabbour evidenced steady improvement of his injuries and symptoms, that he had 150 degrees of shoulder flexion and abduction with no instability, and no shoulder surgery was required as of December 2016. R. 26. While the ALJ did not note Plaintiff's report to his mental health provider that he could not lift his arm over his shoulder in October 2017 (*see* R. 668), this was simply a self-report unsupported by any clinical findings. The ALJ is not required to discuss every piece of evidence in the record. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects") (citation omitted). Plaintiff points to no part of the objective record to suggest that he was more limited in his reaching ability than the ALJ indicated in the RFC. Plaintiff simply asks the Court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

> **2.     ALJ Properly Accounted for Plaintiff's Step-Three Moderate Mental Difficulties in Establishing the RFC**

Plaintiff contends that the ALJ erred by not explicitly incorporating her finding of step-three "moderate" mental limitations regarding concentrating, persisting, and maintaining pace into the RFC assessment. R. 22. However, an ALJ is not necessarily bound by her step-three findings when determining a claimant's RFC. *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4; *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ's finding of a

moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."). The ALJ explained as much in the decision. R. 23 (stating that the mental limitations identified in the "paragraph B" functional criteria are not an RFC assessment but are used to rate the severity of mental impairments at steps two and three, and the mental RFC "requires a more detailed assessment").

While the ALJ must consider evidence of mental impairments when formulating an RFC or hypothetical question to the VE, the ALJ is not required to expressly include step-three findings as to concentration, persistence, or pace in the RFC. *See* SSR 96-8p (stating that the mental RFC determination requires a "more detailed assessment" of the various functions contained in the broad mental limitation categories listed at steps two and three). Plaintiff's cited unpublished authority from the Tenth Circuit stands simply for the concept that an ALJ must consider evidence of mental impairments when formulating an RFC or hypothetical question to the VE. *See Jaramillo v. Colvin*, 576 F. App'x 870, 874 (10th Cir. 2014); *Wiederholt v. Barnhart*, 121 F. App'x 833, 839 (10th Cir. 2005). Neither of these cases stand for the proposition that step-three findings as to concentration, persistence, or pace must be expressly included in the RFC or that "fast-paced" work is precluded with the limitation to simple, routine jobs, as Plaintiff contends.

Here, the ALJ accommodated Plaintiff's difficulties in concentration by limiting Plaintiff to unskilled work, which does not require concentration or attention for more than two hours at a time. R. 30-31. *See* SSA Program Operations Manual System ("POMS") DI § 25020.010(B)(3) (unskilled work requires claimant to "maintain attention for extended periods of 2-hour segments (concentration is not critical)"). The ALJ also limited Plaintiff to only simple, routine tasks; interaction with supervisors as needed to receive work instructions; working in proximity to co-workers but no close cooperation and communication with co-workers in order to complete work

8

tasks; opportunity to work mostly alone; and no interaction with the general public. R. 23. In reaching this determination, the ALJ reviewed numerous records discussing Plaintiff's mental condition, and she connected those records to her RFC findings. R. 26-31.

The ALJ was not required to expressly include additional limitations regarding concentration, persistence, or pace in the RFC. Plaintiff fails to demonstrate that his mental limitations were more severe than the ALJ indicated in the RFC. Accordingly, Plaintiff's argument fails.

### B. ALJ Properly Evaluated VE's Testimony Regarding Standing/Walking Ability

Plaintiff contends that the ALJ improperly adopted the VE's testimony regarding the hypothetical limitation of a four-hour standing/walking ability. At the hearing, the ALJ posed a hypothetical question to the VE that included a limitation of being "able to stand and/or walk up to four hours in an eight-hour work day." R. 74. The hypothetical also included limitations of lifting, carrying, pushing, or pulling up to ten pounds frequently and 20 pounds occasionally, which is consistent with light-exertion work. R. 73-74. *See* 20 C.F.R. § 416.967(b) (explaining requirements of light work). After the ALJ posed the full hypothetical, which is consistent with the final RFC in the decision, the VE stated that there would be light-exertion jobs available with those limitation, such as Bench Assembler, Electrical Accessories Assembler, and Office Helper. R. 74-75. The VE explained that, based on her experience, the reduction of standing/walking to four hours would translate to a sit/stand option at these jobs, and that the sit/stand option would reduce the number of available Electrical Accessories Assembler jobs from 80,000 to 40,000. *Id.* She further testified the sit/stand option would not reduce the available numbers of the other two jobs. *Id.*

9

Plaintiff argues the ALJ could not rely on the VE's testimony in this regard for two reasons. First, the limitation of standing/walking for four hours of an eight-hour workday is not permitted for light-exertion work, and this limitation should have precluded all light-exertion jobs and limited him to sedentary-exertion jobs. However, the Tenth Circuit has held in an unpublished decision that, even when the occupational base at a particular exertion level is significantly reduced, a finding of disability is not automatically required. *See Casey v. Barnhart*, 76 F. App'x 908, 910-11 (10th Cir. 2003). Rather, "[w]here the extent of erosion of the occupation base is not clear," the ALJ "will need to consult a vocational resource," such as a VE. SSR 83-12, 1983 WL 31253, at *2. Here, the ALJ consulted the VE to determine the erosion of the occupational base for a person with Plaintiff's RFC, including a four-hour standing/walking limitation. R. 74. The VE testified that, even with those limitations, three light-exertion jobs would be available. R. 74-75. The VE further testified that one of those occupations would have a reduced number of jobs available because of the standing/walking restriction. *Id.* The ALJ fulfilled her duty to determine Plaintiff's occupational base by consulting the VE and eliciting testimony based on Plaintiff's RFC and other characteristics.

Second, Plaintiff argues the RFC does not account for the VE's sit/stand option. Plaintiff contends that, if the ALJ intended for the four-hour sit/walk restriction to translate to a sit/stand option, the ALJ was required to add a sit/stand option to the RFC. Plaintiff further argues that, if the ALJ intended to apply a sit/stand option, she was required to specify the frequency of the need to alternate sitting and standing. However, the ALJ did not adopt a sit/stand option restriction specifically into the RFC. Instead, as the ALJ explained in the decision, the VE testified that the DOT does not address a four-hour limit for standing and walking, and that this limitation would be treated as a sit/stand option. R. 33. The ALJ was entitled to rely on the VE's own experience in accepting her testimony that there remained a significant number of jobs in the national economy

10

that Plaintiff could perform given his RFC. Accordingly, no conflict existed between the VE's testimony and the RFC, and the ALJ's step five findings were supported by substantial evidence.[2] *See Ellison v. Sullivan*, 929 F.2d 534, 537 (10th Cir. 1990) (recognizing VE's testimony as substantial evidence supporting ALJ's step-five finding that claimant was not disabled).

Plaintiff additionally argues in the third allegation of error that the numbers for the jobs of Electrical Accessory Assembler is unreliable, because the VE's testimony regarding the sit/stand option does not constitute substantial evidence. Plaintiff contends that, once the Electrical Accessory Assembler job is excluded, the remaining number of available jobs – 135,000 – does not constitute a significant number of jobs in the national economy. Because the undersigned concludes that the VE's testimony constituted substantial evidence in support of the ALJ's step-five findings, exclusion of the Electrical Accessory Assembler job is not required. Accordingly, Plaintiff's third allegation of error fails.[3]

---

[2] Plaintiff's cited authority in support of this argument is not pertinent to this issue, because the ALJ did not adopt a sit/stand option into the RFC. *See Vail v. Barnhart*, 84 F. App'x 1, 4 (10th Cir. 2003) (noting that, "[p]recisely how long a claimant can sit without a change in position is also relevant to assumptions about whether he can perform light work") (citing 20 C.F.R. § 404.1567(b)); *Wingo v. Comm'r of Soc. Sec. Admin.*, No. CIV-16-479-SPS, 2018 WL 1505493 (E.D. Okla. Mar. 27, 2018) (explaining that, when a sit/stand option is included in the RFC, the RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing) (citing SSR 96-9p).

[3] In the reply brief, Plaintiff appears to argue for the first time that the Bench Assembler job (DOT #706.684-042) is also unavailable to Plaintiff, because the ALJ incorrectly transcribed the DOT code number for that job. *See* R. 33 (citing incorrect DOT #406.684-042 for Bench Assembler). As a general rule, issues first raised in reply briefs are waived. *See Martin K. Eby Const. Co., Inc. v. OneBeacon Ins. Co.*, 777 F.3d 1132, 1142 (10th Cir. 2015) (citing *M.D. Mark, Inc. v. Kerr–McGee Corp.*, 565 F.3d 753, 768 n. 7 (10th Cir. 2009) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief."). Even if the undersigned were to consider this waived issue, the argument would fail, as the undersigned would conclude it was a harmless scrivener's error that did not affect the ALJ's decision in any way. *See Poppa v. Astrue*, 569 F.3d 1167, 1172 n.5 (10th Cir. 2009) (finding ALJ's incorrect statement that surgeries occurred in 2004 rather than 2005 was "mere scrivener's error" that did not affect outcome of case); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) ("certain technical errors" are minor enough to be harmless).

### C.     ALJ Properly Evaluated Opinion Evidence

Plaintiff contends the ALJ committed reversible error in evaluating opinion evidence from Plaintiff's psychological consultative examiner, Susan M. Linde, Ph.D., and from the agency psychological reviewers, Gary Lindsay, Ph.D., and Sally Varghese, M.D.

#### 1.     Consultative Examiner's Opinion

Plaintiff argues the ALJ erred by failing to mention consultative examiner Dr. Linde's opinion in April 2016 that Plaintiff's "ability to sustain concentration, persist, socially interact and adapt to the demands of a work environment was considered compromised." R. 363. Plaintiff argues this error was harmful, because the ALJ failed to explain how the RFC limitation of performing simple, routine tasks was consistent with Dr. Linde's opinion that Plaintiff had a compromised ability to concentrate, persist, and adapt.

Plaintiff's argument fails. The ALJ extensively documented Dr. Linde's examination findings and opinions. R. 28, 31. The ALJ assigned her opinions regarding Plaintiff's mental capabilities "some weight." R. 31. She found Dr. Linde's opinion that Plaintiff was likely able to perform some work-related mental activities was consistent with the record as a whole. *Id.* (citing R. 370). *See* R. 363. However, the ALJ found Dr. Linde's opinion that Plaintiff's attention and concentration were "compromised" was inconsistent with both her own observations and observations from mental health providers. *Id. See* R. 363 (Dr. Linde observed Plaintiff's attention and concentration during the interview "fell within normal limits"), R. 688-690 (mental health provider observed normal concentration and intact immediate memory in October 2016). Contrary to Plaintiff's argument, the ALJ did not overlook Dr. Linde's opinion but rather found portions of her opinion to be inconsistent with the record. Consistency with the record is an appropriate consideration when weighing medical opinion evidence. *See* 20 C.F.R. § 416.927(c)(4) (explaining that the ALJ will generally assign more weight to a medical opinion when it is more

consistent with the record as a whole). In addition, besides the inconsistency with other parts of the record, Dr. Linde's statement that Plaintiff's ability to sustain concentration, persist, socially interact and adapt to the demands of a work environment "was considered compromised," is vague and does not specify any limitations regarding those characteristics. R. 363.

Moreover, Dr. Linde opined that Plaintiff was capable of carrying out "simple and complex instructions within a work environment." R. 363. The ALJ assigned an RFC mental limitation of performing "simple, routine tasks," which is less demanding than the "simple and complex" instructions that Dr. Linde opined Plaintiff could perform. The ALJ also accommodated Plaintiff's difficulties in concentration by limiting him to unskilled work, which does not require concentration or attention for more than two hours at a time. R. 30-31. *See* POMS DI § 25020.010(B)(3) (unskilled work requires claimant to "maintain attention for extended periods of 2-hour segments (concentration is not critical)").[4] Plaintiff does not persuasively explain how the ALJ failed to address or account for Dr. Linde's opinions in the decision and the RFC. Again, Plaintiff is simply inviting the court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172; Lax *v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo") (quotation and alterations omitted). The undersigned identifies no error in the ALJ's assessment of Dr. Linde's opinion.

### 2. Agency Psychological Reviewer Opinions

Plaintiff argues the ALJ improperly failed to address certain mental limitations from the opinions of psychological agency reviewers Dr. Lindsay and Dr. Varghese. Specifically, Plaintiff

---

[4] Unskilled work also involves only simple tasks, little or no judgment, minimal concentration and social interaction, and only routine changes. *See* 20 C.F.R. § 416.968(a); POMS DI 25020.010(B)(3).

13

contends that the ALJ failed to incorporate into the RFC their opinion in Section I of the mental RFC worksheet that Plaintiff had "moderate" limitations in the "ability to accept instructions and respond appropriately to criticism from supervisors." *See* R. 89, 104. Plaintiff argues this Section I limitation is inconsistent with the agency reviewers' Section III narrative mental RFC opinion that Plaintiff could work with "normal supervision." R. 89, 104-105. Plaintiff contends the ALJ should have pointed out this alleged inconsistency when evaluating the agency opinions and assigning them "partial weight" (R. 30). He does not explain how this alleged error is harmful.

The undersigned identifies no error in the ALJ's assessment of the agency opinions. First, the limitations listed in Section I of the mental RFC assessment form do not themselves constitute the RFC, as agency guidance explains. *See* POMS DI § 24510.060B.2 (explaining that the categorical assessments in Section I of the mental RFC assessment are "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and do[ ] not constitute the RFC assessment"). Dr. Lindsay and Dr. Varghese both translated their limitations from Section I into an actual mental RFC that included limitations of working with normal supervision and in a setting where Plaintiff could work mostly alone. R. 89, 104-105. The ALJ was not required to adopt the Section I findings verbatim, and Plaintiff fails to support his contention that a "stark dissidence" existed between the Section I and Section III opinions. ECF No. 13 at 11.

Second, the ALJ assigned the agency reviewers' opinions "partial weight," and indicated in the RFC that Plaintiff could interact with supervisors "as needed to receive work instructions." R. 23, 30. Plaintiff does not explain how the Section I limitations from the agency reviewers are inconsistent with either the reviewers' actual mental RFC findings in Section III or the ALJ's

determinative mental RFC.[5]  Moreover, given that the ALJ gave the agency opinions only "partial weight," the ALJ was not obliged to adopt every part of their opinions.  The undersigned identifies no error.

## RECOMMENDATION

The undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation.  Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by September 14, 2020.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1).  The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*,

---

[5] Plaintiff cites an out-of-circuit district court case for the proposition that "supervision as needed" does not mean that the claimant "needs constant supervision or help to complete tasks," but rather means "the claimant will at times require supervision and help to complete her job, which is true for almost any employee." *Harris v. Comm'r of Soc. Sec.*, No. 2:18-cv-288, 2018 WL 6321242, at *8 (S.D. Ohio Dec. 4, 2018).  However, Plaintiff fails to demonstrate that the ALJ's RFC in this case, which includes a limitation of supervision "as needed to receive work instructions" is inconsistent with any part of the agency reviewers' opinions.  Therefore, the citation is unhelpful and unpersuasive.

950 F.2d 656, 659 (10th Cir. 1991)).  Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

**SUBMITTED** this 31st day of August, 2020.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**