IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PHILLIP A. D., JR. ) | |
| ) | |
| Plaintiff, ) | Case No. 19-CV-0163-CVE-JFJ |
| v. ) | |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Before the Court is the report & recommendation (R&R) (Dkt. # 17) of United States Magistrate Judge Jodi F. Jayne on review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying the plaintiff disability benefits. The magistrate judge recommends that the Court affirm the Commissioner's denial of plaintiff's application for benefits. Plaintiff filed a timely objection (Dkt. # 18) to the R&R, and he requests that the Court reject the R&R and remand for further administrative proceedings. The Commissioner did not file a response to the objection. Reviewing the objection de novo, the Court has considered the administrative record (Dkt. # 10), the parties' briefs, the R&R, and plaintiff's objection, and concludes that the R&R should be accepted, and the Commissioner's determination should be affirmed.

---

[1] Effective July 11, 2021, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. Background

Plaintiff, then a 42-year-old male, originally filed a claim for supplemental security income under Title XVI of the Social Security Act on December 28, 2015, alleging disability beginning on June 22, 2015, which he later amended to October 5, 2016. Dkt. # 10, at 17. Plaintiff claimed he could not work because of conditions including bipolar disorder, hepatitis, post-traumatic stress disorder ("PTSD"), anxiety, and depression. Id. at 219. Plaintiff's claim for benefits was denied initially on April 22, 2016, and on reconsideration on July 28, 2016. Id. at 81-107. Plaintiff then requested a hearing before an ALJ, which took place on February 12, 2018. Id. at 39-80. The ALJ denied plaintiff benefits on March 29, 2018, finding that plaintiff was not disabled because he could perform other jobs existing in the national economy. Id. at 17-34. The Appeals Council denied review, and plaintiff appealed. Id. at 1-3; Dkt. # 2.

## II. Standard of Review

Pursuant to Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." The Court's task of reviewing the Commissioner's decision involves determining "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. "It is 'more than a scintilla, but less than a preponderance.'" Newbold v. Colvin, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Martinez v. Barnhart,

444 F.3d 1201, 1204 (10th Cir. 2006) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)).

A party's right to de novo review is subject to the Tenth Circuit's "firm-waiver rule," which provides that "a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." United States v. 2121 E. 30th St., 73 F.3d 1057, 1059-60 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." Id. at 1060. The Tenth Circuit has applied the firm-waiver rule where the plaintiff's objection to the report and recommendation merely asserted a series of errors without explaining why the magistrate's reasoning was erroneous. See Zumwalt v. Astrue, 220 F. App'x 770, 777-78 (10th Cir. 2007).

### III. Applicable Law

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled and therefore entitled to benefits. See 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of establishing a prima facie case of disability at steps one through four." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting Hackett v. Barnhart, 395 F.3d 1168, 1171 (10th Cir. 2005)). "Step one requires the claimant to demonstrate 'that he is not presently engaged in substantial gainful activity.'" Id. (quoting Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir.2005)). "At step two, the claimant must show 'that he has a medically severe impairment or combination of impairments.'" Id. (quoting Grogan, 399 F.3d at 1261). "At step three, if a claimant can show that the impairment is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits." Id. (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir.1988)). "If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant

3

to show 'that the impairment or combination of impairments prevents him from performing his past work.'" Id. (quoting Grogan, 399 F.3d at 1261). If the claimant meets this burden, the analysis continues to step five, where the burden of proof shifts to the Commissioner to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given the claimant's age, education, and work experience. Id. (citing Hackett, 395 F.3d at 1171).

In reviewing the ALJ's decision, the Court may not reweigh the evidence or substitute its judgment for that of the ALJ; the Court's task is to review the record to determine whether the ALJ applied the correct legal standard and if her decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir.1988). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

## IV.    ALJ's Decision

At step one, the ALJ found that plaintiff had not engaged in substantial gainful employment since the application date of December 28, 2015. Dkt. # 10, at 19. At step two, the ALJ found that plaintiff had multiple severe impairments: depression; anxiety disorder; personality disorder; status post right shoulder dislocation and rotator cuff tear; and status post non-displaced fracture of the tibial plateau and proximal fibula. Id. at 20. At step three, the ALJ found that plaintiff's

severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the Listings). Id. at 21-23. Specifically, the ALJ considered Listing 1.00, et seq., Musculoskeletal System and Listing 12.00, et seq., Mental Disorders. Id. at 21. In assessing plaintiff's right shoulder dislocation and rotator cuff tear, the ALJ found that the evidence did not reveal "a resulting gross anatomical deformity with signs of limitation of motion resulting in an inability to perform fine and gross movements effectively as required by Listing 1.02." Id. In assessing plaintiff's mental impairments under the "paragraph B" criteria of Listing 12.04, the ALJ found that plaintiff had mild limitations in the area of adapting or managing oneself, and moderate limitations in the three areas of (1) understanding, remembering, or applying information, (2) interacting with others, and (3) concentrating, persisting, or maintaining pace. Id. at 22.

At step four, after evaluating the objective and opinion evidence, and plaintiff's statements, the ALJ concluded that plaintiff had the residual functional capacity (RFC) to perform a range of light work as follows:

> The claimant is able to lift, carry, push or pull up to ten pounds frequently and twenty pounds occasionally. The claimant is able to sit for up to six hours in an eight-hour workday. The claimant is able to stand and/or walk up to four hours in an eight-hour workday. The claimant is able to occasionally climb ramps or stairs and is able to frequently balance or stoop. The claimant cannot not [sic] climb ladders, ropes or scaffolds, kneel, crouch or crawl and should not be exposed to unprotected heights. The claimant is able to perform simple, routine tasks. The claimant is able to interact with supervisors as needed to receive work instructions and is able to work in proximity to co-workers. However, the job should not require close cooperation and communication with co-workers in order to complete work tasks. The job should provide opportunity for the claimant to work mostly alone. The claimant should not interact with the general public[.]

Id. at 23.

At step five, the ALJ found that plaintiff could not perform past relevant work. Id. at 32. However, based on the testimony of a vocational expert (VE), the ALJ found that plaintiff could perform other unskilled light work, such as bench assembler, electrical accessory assembler, and

5

office helper. Id. at 32-33. The ALJ noted that the VE's testimony that a four-hour limit on standing or walking would be treated as a "sit/stand" option, and it would reduce the available number of electrical accessory assembler jobs by half, from 80,000 to 40,000. Id. at 33. The ALJ determined the VE's testimony tracked the information in the Dictionary of Occupational Titles (DOT). Id. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. Id. Accordingly, the ALJ ultimately concluded that plaintiff was not disabled. Id.

## V.   Discussion

Plaintiff raised four points of error in his opening brief: (1) the ALJ failed to propound a proper hypothetical to the VE, resulting in failure at steps four and five of the sequential evaluation; (2) plaintiff cannot perform the jobs found for him by the ALJ at step 5 of the sequential evaluation; (3) there are an insufficient number of jobs available to plaintiff; and (4) the ALJ failed to properly evaluate the medical source evidence. Plaintiff's objection to the R&R reiterates these arguments. Dkt. # 18.  As stated, the Commissioner did not respond to the objection.  The Court will address each of plaintiff's objections in turn.

### A. The ALJ Properly Evaluated the Evidence Regarding Plaintiff's Physical and Mental RFC Limitations

#### 1. The ALJ Properly Considered Plaintiff's Reaching Ability

Plaintiff argues that the ALJ committed reversible error by failing to include any reaching limitations in his hypothetical to the VE or in the RFC. Dkt. # 18, at 1-3. This argument is basically

the same argument he made before the magistrate judge.[2] In response to plaintiff's argument that the ALJ ignored the effects of plaintiff's severe impairment when formulating the RFC, the magistrate judge meticulously recounted the evidence in the record that the ALJ used to come to her conclusion:

> In establishing the RFC for light work, the ALJ documented the evidence showing that Plaintiff suffered a dislocated right shoulder in October 2016, which was corrected in the emergency room, and that treating physician Antoine Jabbour, M.D., managed Plaintiff's shoulder treatment in the months following the accident. See R. 24-26 (citing R. 426, 429-429, 433, 435, 437, 443, 445-446, 448, 450-451). A magnetic resonance image ("MRI") of the right shoulder revealed a large Hill-Sachs deformity of the right humeral head with a rotator cuff tear. R. 24 (citing R. 435). As the ALJ noted, Dr. Jabbour prescribed narcotic pain medication, a sling, and shoulder exercises in October 2016. R. 25 (citing R. 429). In November 2016, Dr. Jabbour described the right shoulder injury as progressing slowly, (R. 437), and later that month, he noted that the right shoulder may require rotator cuff repair surgery but Plaintiff would have to wait a couple of months to allow the bone to heal (R. 446). At Plaintiff's final appointment with Dr. Jabbour in December 2016, Plaintiff reported his shoulder was "improving significantly," and Dr. Jabbour observed about 150 degrees of active forward flexion and abduction without instability. R. 450. Dr. Jabbour assessed a "much improved" right shoulder. R. 451. He opined that Plaintiff had reached maximum medical improvement, and he advised that Plaintiff's shoulder would improve slowly over time. *Id*. Dr. Jabbour discharged Plaintiff at that visit, indicating no surgery was required and discontinuing the narcotic pain medication prescription. *Id*.
>
> The ALJ also noted Plaintiff's testimony that Dr. Jabbour wanted to wait for his rotator cuff to heal before pursuing surgery, and that he did not have the money for any additional treatment. R. 24 (citing R. 61). The ALJ noted Plaintiff testified it was difficult for him to raise his hands over his head, grab certain things, and reach, that he estimated he could lift twenty to twenty-five pounds, and that he had broken his right elbow. R. 24 (citing R. 61-63). The ALJ found Plaintiff's own testimony was not entirely consistent with the medical evidence and other evidence

---

[2] In his opening brief, plaintiff mainly argued that the "ALJ's decisional RFC [did not] contain a limitation regarding reaching." Dkt. # 13, at 5. However, in his objection, plaintiff reworded his argument to say "[t]here [we]re no limitations whatsoever to reflect Claimant's severe shoulder impairment, which the ALJ admits significantly limits him." Dkt. # 18, at 2. The Court will assume that plaintiff intends to reiterate his former argument because his latter argument is easily rejected by simply reading the first line of the ALJ's RFC, which includes an exertional limitation due to plaintiff's shoulder injury: "The claimant is able to lift, carry, push or pull up to ten pounds frequently and twenty pounds occasionally." Dkt. # 10, at 23.

> in the record concerning the intensity, persistence, and limiting effects of his symptoms. R. 21. Plaintiff does not challenge the ALJ's consistency findings in this regard.

Dkt. # 17 at 6-7. After a review of the ALJ's reasoning, it is clear to the Court that the ALJ considered all the evidence relevant to finding a reaching limitation but determined that such evidence did not require one. Specifically, the ALJ stated plaintiff's treatment with Dr. Jabbour evidenced steady improvement of his injuries and symptoms, that he had 150 degrees of shoulder flexion and abduction with no instability, and that no shoulder surgery was required as of December 2016. Dkt. # 10, at 26. Thus, plaintiff simply asks the Court to re-weigh the evidence, which is not permitted. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

Plaintiff also notes in his objection that the reason for the lack of any shoulder limitation in the ALJ's RFC was due, in part, to the VE's hearing testimony. At the hearing, plaintiff's attorney asked the VE, "if we limited reaching to less than frequent . . . with the person's dominant right upper extremity, would that, at all, impact the jobs that you identified?" Dkt. # 10, at 78. The VE replied, "[y]es. It would eliminate all three." Id. The mere fact that plaintiff posed a hypothetical question containing additional limitations did not make such limitations supported or binding on the ALJ. See Bean v. Chater, 77 F.3d 1210, 1214 (10th Cir. 1995) (holding ALJ was not required to accept answer to hypothetical question including limitations alleged but not accepted as supported).

Finally, plaintiff cites Givens v. Astrue, 251 F. App'x 561, 566 (10th Cir. 2007) (unpublished)[3] for the proposition that a severe impairment at step two of the sequential evaluation process cannot simply disappear at step five. Dkt. # 18, at 3. The Givens court called this an

---

[3] This and other cited unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

"adjudicative sleight-of-hand" and ultimately held that the ALJ committed reversible error. 251 F. App'x at 566. But the factual situation in Givens was far different from the one here. In Givens, the ALJ listed the claimant's depression as a severe impairment at step two but failed to discuss the impairment in his subsequent analysis. Id. at 567-68. In fact, the ALJ in Givens did not even mention the claimant's mental limitations in his RFC. Id. at 567. Here, the ALJ discussed plaintiff's shoulder injury throughout her step four analysis, which the Court recounted above. Further, the ALJ included an exertional limitation in plaintiff's RFC. The ALJ's conclusion that plaintiff's shoulder injury did not require a further reaching limitation is not "adjudicative sleight-of-hand" constituting reversible error; plaintiff simply disagrees with the ALJ's conclusion. Thus, the ALJ committed no error in her evaluation of plaintiff's shoulder injury and any resulting functional limitations.

**2. The ALJ Properly Accounted for Plaintiff's Step-Three Moderate Mental Difficulties in Establishing the RFC**

Plaintiff also argues that "the ALJ did not take into account the effects of a moderate limitation of concentration, persistence or pace that she herself found to be present." Dkt. # 18, at 4-5 (citing Dkt. # 10, at 22). Specifically, plaintiff claims that the three jobs identified by the VE—bench assembler, electrical accessory assembler, and office helper—have production quotas and are thus considered "fast-paced." Id. From this, plaintiff asserts that the limitation in his RFC that he is "able to perform simple, routine tasks," Dkt. # 10, at 23, equals a limitation of no fast-paced jobs. The Court disagrees, as plaintiff's argument is completely unfounded.

Plaintiff cites Wiederholt v. Barnhart, 121 F. App'x 833, 839 (10th Cir. 2005), for the proposition that "there has been a linkage of 'no fast-paced' work with the limitation to simple, routine jobs that are not complex jobs." Dkt. # 18, at 4. But plaintiff misinterprets Wiederholt, which never discussed any "linkage" between a limitation of simple, routine work and a limitation

9

of no fast-paced work. Rather, the Wiederholt court held the ALJ's hypothetical to the VE was flawed "[b]ecause the ALJ omitted, without explanation, impairments that he found to exist, such as moderate difficulties maintaining concentration, persistence, or pace." 121 F. App'x at 839. Thus, Wiederholt stands for the proposition that an ALJ must consider evidence of mental impairments when formulating an RFC or hypothetical question to the VE. Accordingly, the Wiederholt holding is irrelevant here because plaintiff specifically states that he is not objecting to the RFC or hypothetical to the VE as they relate to his mental impairments. See Dkt. # 18, at 4 ("Claimant's argument was not directed to the point that the limitation of concentration, persistence, or pace in the paragraph B determination should be in the hypothetical or RFC.").

Plaintiff also cites Bustos v. Astrue, Case No. CIV-10-990 LAM, 2011 WL 13284451 (Sept. 30, 2011), for the proposition that "[t]he exclusion of fast-paced or high stress jobs is the equivalent of a simple, repetitive job." Dkt. # 18, at 4. In Bustos, the ALJ concluded in his RFC that the plaintiff had the mental focus to perform "simple tasks that are not performed in a fast[-]paced production environment [and] involving only simple work[-]related decisions." Bustos, 2011 WL 13284451, at *5 (alterations in original) (quoting R. at 22-23). The court found those RFC determinations accounted for the ALJ's finding at steps two and three that the plaintiff had moderate difficulties regarding concentration, persistence, or pace. Id. But, importantly, the Bustos court did not equate the limitation of simple tasks to the limitation of no fast-paced jobs. Rather, the court simply noted the ALJ's RFC findings, which included two separate limitations—one that limited the plaintiff to simple tasks, and one that limited the plaintiff to no fast-paced jobs—and then held that the ALJ properly accounted for all the plaintiff's mental limitations. Id.

Thus, contrary to plaintiff's assertion, there is no corollary between limiting a person to performing only simple, routine tasks and limiting a claimant to no fast-paced jobs. Those are separate limitations, and the ALJ did not err in concluding that plaintiff could perform three jobs with production quotas.

> B. **The ALJ Properly Evaluated the VE's Testimony Regarding Plaintiff's Standing/Walking Ability**

Plaintiff reasserts the same argument he made before the magistrate judge regarding the ALJ's step-five conclusion—that plaintiff cannot perform approximately 20,000 jobs found for him by the ALJ at step five of the sequential evaluation process, and thus there are not enough jobs available to plaintiff. Dkt. # 18, at 5.

At the hearing, the ALJ posed a hypothetical question to the VE that included a limitation of being "able to stand and/or walk up to four hours in an eight-hour work day." Dkt. # 10, at 74. The hypothetical also included limitations of lifting, carrying, pushing, or pulling up to ten pounds frequently and 20 pounds occasionally, which is consistent with light-exertion work. Id. at 73-74; see also 20 C.F.R. § 416.967(b) (explaining requirements of light work). After the ALJ posed the full hypothetical, which reflects the final RFC, the VE stated that there would be light-exertion jobs available with those limitations, such as bench assembler, electrical accessories assembler, and office helper. Id. at 74-75. The VE explained that, based on her experience, the reduction of standing/walking to four hours would translate to a sit/stand option at these jobs, and that the sit/stand option would reduce the number of available electrical accessories assembler jobs from 80,000 to 40,000. Id. The VE further testified that the sit/stand option would not reduce the available numbers of the other two jobs. Id. at 75.

The ALJ incorporated the VE's testimony into her final decision:

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations at the light exertional level, such as: [bench assembler – 100,000 jobs; electrical accessory assembler – 40,000 jobs; and office helper – 35,000 jobs].

Id. at 33.

Plaintiff notes that the Social Security regulations, and Tenth Circuit case law, mandate that "a person must be able to walk and/or stand for at least six hours of an eight hour workday" to perform light-exertion work. Dkt. # 18 at 5 (quoting Helmer v. Barnhart, 112 F. App'x 705, 709 (10th Cir. 2004) (citing SSR 83-10, 1983 WL 31251, *6 (1983))). Plaintiff then argues that the ALJ's standing/walking limitation of four hours of an eight-hour workday is not permitted for light-exertion. Plaintiff presented this same argument to the magistrate judge, who disposed of it quite succinctly:

> [T]he Tenth Circuit has held in an unpublished decision that, even when the occupational base at a particular exertion level is significantly reduced, a finding of disability is not automatically required. *See Casey v. Barnhart*, 76 F. App'x 908, 910-11 (10th Cir. 2003). Rather, "[w]here the extent of erosion of the occupation base is not clear," the ALJ "will need to consult a vocational resource," such as a VE. SSR 83-12, 1983 WL 31253, at *2. Here, the ALJ consulted the VE to determine the erosion of the occupational base for a person with Plaintiff's RFC, including a four-hour standing/walking limitation. R. 74. The VE testified that, even with those limitations, three light-exertion jobs would be available. R. 74-75. The VE further testified that one of those occupations would have a reduced number of jobs available because of the standing/walking restriction. *Id.*

Dkt. # 17, at 10. The Court adopts the magistrate judge's reasoning and finds that "[t]he ALJ fulfilled her duty to determine [p]laintiff's occupational base by consulting the VE and eliciting testimony based on [p]laintiff's RFC and other characteristics." Id.

Plaintiff also argues that the ALJ erred "because neither the ALJ's hypothetical nor her RFC contains a sit/stand option." Dkt. # 18, at 6. Notably, however, plaintiff presents no argument or evidence for why a sit/stand option was necessary. The ALJ did not find a sit/stand option necessary and noted her supporting evidence for that determination, including findings of full left knee extension, Dkt. #10, at 26, left knee x-rays revealing no significant abnormalities, id. at 25, and a normal gait, id. at 28.

Finally, plaintiff argues that the ALJ erred by accepting the VE's testimony about jobs and job numbers but not the requirement for a sit/stand option. Dkt. # 18, at 6. Plaintiff's argument rests on a faulty premise because the VE never required a sit/stand option in the way plaintiff envisions it. There is a difference between a standing and walking limitation and a limitation involving alternating between sitting and standing (sit/stand limitation). The SSA describes the difference as follows:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)

SSR 83-12, 1983 WL 31253, at *4. Thus, a standing and walking limitation concerns the total amount of time in an 8-hour day that a person can stand or walk. On the other hand, a sit/stand limitation concerns the maximum amount of time a person can stand at one time. If an ALJ

determines that a sit/stand limitation is necessary, "[t]he RFC must be specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9P, 1996 WL 374185, at *7.[4]

Turning to this case, after the ALJ directed her hypothetical to the VE, the VE stated as follows:

> A. Yes, Your Honor. At a light level, there would be a bench assembler -- DOT number 706.684-042; the SVP is a 2; in the national economy, approximately 100,000. A second at light would be an electrical accessories assembler -- DOT number 729.687-010; an SVP of 2; in the national economy, there're approximately 80,000; but with a sit-stand option, which would be required, I'd reduce that by 50 percent, to 40,000. . . . And a third would be an office helper – DOT number 239.567-010; an SVP of 2; in the national economy, approximately 35,000. And DOT doesn't address the sit-stand option. That's based on my experience in placement.

Dkt. # 10, at 74-75 (emphasis added). After the VE responded to the ALJ's hypothetical, the ALJ asked a follow-up question about the sit/stand option: "And when you say, [s]it-stand, you're talking about the reduction of standing and walking to four hours?" Id. at 75. The VE responded, "[c]orrect." Id. The ALJ incorporated this colloquy with the VE into her final decision:

> The vocational expert testified that the Dictionary of Occupational Titles (DOT) does not address a four-hour limit for standing and or walking and that this limitation would be treated as a "sit/stand" option. Based on her professional experience in job placement, about one-half of electrical accessory assembler jobs can be performed in that manner. Accordingly, the number of jobs available in the national economy for the occupation of *Electrical Accessory Assembler* was reduced by 50 percent, from 80,000 to 40,000.

Id. at 33 (first emphasis added).

---

[4] Technically, SSR 96-9p applies only in the case of sedentary work, not light work. See Vititoe v. Colvin, 549 F. App'x 723, 731 (10th Cir. 2013) ("But SSR 96–9p applies in cases where the claimant is limited to less than the full range of *sedentary work* and the disability determination is not directed by the Grids. Here the ALJ found that Mr. Vititoe retains the capacity to perform less than the full range of *light work*, so SSR 96-9p is not applicable." (emphasis in original)). Nevertheless, "[p]recisely how long a claimant can sit without a change in position is also relevant to assumptions whether he can perform light work." Vail v. Barnhart, 84 F. App'x 1, 4 (10th Cir. 2003) (citing 20 C.F.R. § 404.1567(b)).

Contrary to plaintiff's argument, the VE never incorporated a limitation regarding alternating between standing and sitting into his answer. Plaintiff believes that the VE's use of the term "stand/sit option," means that he must have been referring to a limitation about how long plaintiff can stand at one time. But the VE was referring to a standing and walking limitation, as evidenced by the ALJ's question concerning the VE's terminology selection: "Q: And when you say, [s]it-stand, you're talking about the reduction of standing and walking to four hours? A: Correct." Id. at 75. Thus, the standing and walking limitation used by the VE is the same one that was in the RFC—there is no inconsistency. Accordingly, no conflict existed between the VE's testimony and the RFC, and the ALJ's step five findings were supported by substantial evidence. See Ellison v. Sullivan, 929 F.2d 534, 537 (10th Cir. 1990) (recognizing VE's testimony as substantial evidence supporting ALJ's step-five finding that claimant was not disable).

Plaintiff also argues that, because the number for the jobs of electrical accessory assembler is unreliable, the remaining number of available jobs—135,000—does not constitute a significant number of jobs in the national economy. Dkt. # 18, at 7. Because the Court finds that the VE's testimony constituted substantial evidence in support of the ALJ's step-five findings, exclusion of the electrical accessory assembler job is not required. Further, without the exclusion, the number of jobs is 175,000, and the Tenth Circuit has held that 152,000 jobs in the national economy is sufficient. Stokes v. Astrue, 274 F. App'x 675, 684 (10th Cir. 2008). Accordingly, plaintiff's argument fails.

### C. The ALJ Properly Evaluated Opinion Evidence

#### 1. Consultative Examiner's Opinion

Plaintiff argues that the ALJ erred by failing to mention consultative examiner Dr. Linde's opinion in April 2016 that plaintiff's "ability to sustain concentration, persist, socially interact and adapt to the demands of a work environment was considered compromised." Dkt. # 18, at 8. Plaintiff argues this error harmed him because the ALJ failed to explain how the RFC limitation of performing simple, routine tasks was consistent with Dr. Linde's opinion that plaintiff had a compromised ability to concentrate, persist, and adapt. Id.

Plaintiff's argument fails. The ALJ extensively documented Dr. Linde's examination findings and opinions, Dkt. #10, at 28, 31, and the ALJ assigned those opinions "some weight." Id. at 31. The ALJ noted that Dr. Linde's "opinion that the claimant was likely able to perform some work related mental activities is consistent with the record as a whole." Id. However, the ALJ found Dr. Linde's "opinion that the claimant's attention and concentration [were] compromised is inconsistent with her . . . own findings and [her] objective notes indicate that the claimant's attention, concentration, and memory are with[in] normal limits with medication compliance." Id.; see also id. at 363 (Dr. Linde observed plaintiff's attention and concentration during the interview "fell within normal limits"); id. at 688-90 (mental health provider observed that plaintiff had normal concentration and intact immediate memory in October 2016). Thus, contrary to plaintiff's argument, the ALJ did not overlook Dr. Linde's opinion, but rather, found portions of it inconsistent with the record, which is an appropriate consideration when weighing medical opinion evidence. See 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a

medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").[5]

Moreover, as the magistrate judge stated,

> Dr. Linde opined that Plaintiff was capable of carrying out "simple and complex instructions within a work environment." R. 363. The ALJ assigned an RFC mental limitation of performing "simple, routine tasks," which is less demanding than the "simple and complex" instructions that Dr. Linde opined Plaintiff could perform. The ALJ also accommodated Plaintiff's difficulties in concentration by limiting him to unskilled work, which does not require concentration or attention for more than two hours at a time. R. 30-31. *See* POMS DI § 25020.010(B)(3) (unskilled work requires claimant to "maintain attention for extended periods of 2-hour segments (concentration is not critical)"). Plaintiff does not persuasively explain how the ALJ failed to address or account for Dr. Linde's opinions in the decision and the RFC. Again, Plaintiff is simply inviting the court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172; Lax *v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo") (quotation and alterations omitted).

Dkt. # 17, at 13 (internal footnotes omitted). The Court adopts the magistrate judge's reasoning and identifies no error in the ALJ's assessment of Dr. Linde's opinion.

### 2. Agency Psychological Reviewer Opinions

Plaintiff argues the ALJ improperly failed to address certain mental limitations from the opinions of psychological agency reviewers Dr. Lindsay and Dr. Varghese. Specifically, plaintiff contends that the ALJ failed to incorporate into the RFC their opinion in section I of the mental

---

[5] The magistrate judge also reasoned that, besides the inconsistency, Dr. Linde's statement that plaintiff's ability to sustain concentration, persist, socially interact and adapt to the demands of a work environment "was considered compromised," was "vague and does not specify any limitations regarding those characteristics." Dkt. # 17, at 13 (quoting Dkt. # 10, at 363). Plaintiff argues that because the ALJ did not make this finding, the magistrate judge's reasoning seeks to support the decision through an improper post hoc justification. Dkt. # 18, at 8 (citing Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004)). The Court need not decide whether the magistrate judge's reasoning was an improper post hoc justification because such justification is not needed for the Court to find that the ALJ committed no error in assessing Dr. Linde's opinion.

RFC worksheet that plaintiff had "moderate" limitations in the "ability to accept instructions and respond appropriately to criticism from supervisors." Dkt. #10, at 89, 104. Plaintiff argues this section I limitation conflicts with the agency reviewers' section III narrative mental RFC opinion that plaintiff could work with "normal supervision." Id. at 89, 104-05. Plaintiff contends the ALJ should have pointed out this alleged inconsistency when evaluating the agency opinions and assigning them "partial weight." Id. at 30.

Plaintiff made this exact same argument before the magistrate judge. Plaintiff presented no argument to this Court as to why the magistrate judge's reasoning was wrong. Rather, plaintiff simply requested that the Court reject the magistrate's findings and then block quoted his entire argument from his opening brief. The Court has reviewed the magistrate judge's recommended disposition of this issue de novo and accepts it in its entirety without further comment.[6]

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 17) is **accepted**, and the Commissioner's decision denying benefits is **affirmed**. A separate judgment is entered herewith.

**DATED** this 9th day of August, 2021.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[6] Plaintiff argues that the magistrate applied a harmless error analysis even though defendant did not raise that issue. Thus, plaintiff argues, such argument was waived. The Tenth Circuit has "generally recognized the applicability of [the] principle [of harmless error] in the administrative law review setting." Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (citing St. Anthony Hosp. v. United States Dep't of Health & Hum. Servs., 309 F.3d 680, 691 (10th Cir. 2002)). Further, courts can "initiate harmless error review sua sponte in an appropriate case." Mollett v. Mullin, 348 F.3d 902, 920 (10th Cir. 2003). However, none of this is relevant here, because the magistrate judge merely stated in passing that plaintiff "d[id] not explain how this alleged error was harmful." Dkt. # 17, at 14. The magistrate judge then reviewed the merits of plaintiff's argument and determined that there was no error.